LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

RICARDO BARCENAS, *on behalf of himself, FLSA*
*Collective Plaintiffs, and the Class,*

     Plaintiff,

  v.

JPM SUTTON LLC
 d/b/a COCO PAZZERIA,
CP SPRING ST LLC
 d/b/a COCO PAZZO,
 f/d/b/a COCO PAZZERIA SOHO,
420 EAST 59TH REST LLC,
 d/b/a MORSO
JESSIE LUONGO, and
GIUSEPPE LUONGO,
 a/k/a PINO LUONGO,

     Defendants

Case No.: 1:22-cv-02140 (JPO)

**SECOND AMENDED CLASS AND COLLECTICE ACTION COMPLAINT**

Jury Trial Demanded

---

   Plaintiff RICARDO BARCENAS, on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Second Amended Class and Collective Action Complaint against Defendants JPM SUTTON LLC d/b/a COCO PAZZERIA, CP SPRING ST LLC d/b/a COCO PAZZO, f/d/b/a COCO PAZZERIA SOHO, 420 EAST 59TH REST LLC., d/b/a MORSO ("Corporate Defendants"), JESSIE LUONGO, and GIUSEPPE LUONGO a/k/a PINO LUONGO (collectively, "Individual Defendants"; and, together with Corporate Defendants, "Defendants"), and states as follows:

1

**INTRODUCTION**

1.          Plaintiff alleges, pursuant to the Fair Labor Standards Act as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he, FLSA Collective Plaintiffs and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages due to invalid tip credit; (2) unpaid tip compensation due to invalid tip pooling; (3) unlawfully retained gratuities; (4) liquidated damages; and (5) attorney's fees and costs.

2.          Plaintiff alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages due to time-shaving; (2) unpaid minimum wages, due to an invalid tip credit; (3) unpaid tip compensation due to  invalid tip pooling; (4) unlawfully retained gratuities; (5) unpaid spread of hours; (6) statutory penalties; (7) liquidated damages; and (8) attorneys' fees and costs.

3.          Plaintiff additionally alleges for damages under the Internal Revenue Code, 26 U.S.C. § 7434 for relief, damages, fees, and costs in this matter because Defendants willfully filed fraudulent tax information forms with the Internal Revenue Service ("IRS").

4.          Plaintiff further alleges that Defendants breached their contract with Plaintiff and Class members by failing to pay employer payroll taxes for Plaintiff and Class members, as required by the Federal Insurance Contribution Act ("FICA").

**JURISDICTION AND VENUE**

5.          This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

6.          Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

7.     The IRS will be notified of this Complaint as the Internal Revenue Code requires. Specifically, the Internal Revenue Code provides that "[a]ny person bringing an action under [26 U.S.C. § 7434] Subsection (a) shall provide a copy of the complaint to the IRS upon the filing of such complaint with the court." 26 U.S.C. § 7434(d).

## **PARTIES**

8.     Plaintiff BARCENAS is a resident of Queens County, New York.

9.     Defendants operate three (3) Italian restaurants as a single integrated enterprise. The Restaurants are located at the following addresses:

    a.  COCO PAZZERIA: 1078 1st Ave, New York, New York 10022;

    b.  COCO PAZZO (formerly COCO PAZZERIA SOHO): 307 Spring St, New York, New York 10013*;* and

    c.  MORSO: 420 East 59th Street, New York, NY 10022

       (collectively, "the Restaurants").

10.    All the Restaurants are operated as a single integrated enterprise under the common control of the Corporate and Individual Defendants. Specifically, the Restaurants are engaged in related activities, share common ownership, and have a common business purpose:

    a)  All Restaurants are under the control of Corporate and Individual Defendants. Specifically, Individual Defendant GIUSEPPE "PINO" LUONGO operates the totality of the Restaurants.

    b)  All the Restaurants are integral part of Defendants Italian/Tuscan gastronomic projects. *See* **Exhibit A**.

c) All the Restaurants advertise jointly under the name of Individual Defendant GIUSEPPE "PINO" LUONGO. Defendants' three (3) restaurants are considered "sister restaurants" on Restaurant Morso's website. *See* **Exhibit B**.

d) All the Restaurants are publicly displayed as a common and integrated enterprise, as it can be seen on a YouTube video displaying Individual Defendant GIUSEPPE "PINO" LUONGO whose chef jacket displays the "Cocos" and "Morso" Restaurants' logo. *See* **Exhibit C**.

e) All Restaurants have a centralized Human Resources that deals with hiring, firing, and administering all the Restaurants' work force. Moreover, all the Restaurants have a centralized platform for hiring.

f) The Restaurants employees are shifted among the Restaurants. Employees are also directed to cover shifts at different locations. More precisely, Plaintiff was hired to perform work at Coco Pazzeria and eventually, Defendants expressed their intentions to transfer Plaintiff to work at Defendants' Morso restaurant.

g) The Restaurants interchange supplies among each other. When short of products or utensils, Defendants send Plaintiff or Class members to any of their Restaurants to deliver ingredients, utensils, and uniforms.

Although Plaintiff did not work at all the Restaurants, all of the Restaurants are appropriately named in this Complaint through the relevant Corporate Defendants described above. Because all of the Restaurants share identical illegal wage and hour policies, the Restaurants (and the relevant Corporate Defendants) are properly named because of outstanding liability to the Class members for whom Plaintiff seek to represent.

11. Defendants operate the Restaurant through the following Corporate Defendants:

a) Corporate Defendant JPM SUTTON LLC d/b/a COCO PAZZERIA, is a domestic corporation organized under the laws of the State of New York with an address for service of process at 420 East 59th Street, New York, NY 10022 and a principal place of business located at 1078 1st Ave, New York, NY 10022.

b) Corporate Defendant CP SPRING ST LLC d/b/a COCO PAZZO f/d/b/a COCO PAZZERIA SOHO is a domestic corporation organized under the laws of the State of New York with an address for service of process and a principal place of business located at 307 Spring Street, New York, NY 10013

c) Corporate Defendant 420 EAST 59TH REST LLC., d/b/a MORSO is a domestic corporation organized under the laws of the State of New York with an address of service of process and a principal place of business located at 420 East 59th Street, New York, NY 10022.

12. Individual Defendant JESSIE LUONGO is a principal and general manager of all Corporate Defendants. Defendant JESSIE LUONGO exercises operational control as it relates to all employees including Plaintiff and the Class. Defendant JESSIE LUONGO frequently visits the Restaurant. Defendant exercises—and also delegates to managers and supervisors—the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment, including those of Plaintiff, and the Class. At all relevant times, employees of the Restaurants could complain to Defendant JESSIE LUONGO directly regarding any of the terms of their employment, and Defendant JESSIE LUONGO would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.

Defendant JESSIE LUONGO had the power and authority to supervise and control supervisors of Plaintiff, and Class members, and could reprimand employees.

13.    Individual Defendant GIUSEPPE LUONGO a/k/a PINO LUONGO is an owner and principal of Corporate Defendants. Defendant GIUSEPPE LUONGO a/k/a PINO LUONGO exercises operational control as it relates to all employees including Plaintiff and the Class. Defendant GIUSEPPE LUONGO a/k/a PINO LUONGO frequently visits the Restaurants. Defendant exercises—and also delegates to managers and supervisors—the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment, including those of Plaintiff, and the Class. At all relevant times, employees of the Restaurants could complain to Defendant GIUSEPPE LUONGO a/k/a PINO LUONGO directly regarding any of the terms of their employment, and Defendant GIUSEPPE LUONGO a/k/a PINO LUONGO would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating, or hiring such employees. Defendant GIUSEPPE LUONGO a/k/a PINO LUONGO had the power and authority to supervise and control supervisors of Plaintiff and Class members, and could reprimand employees.

14.    Corporate Defendants are properly named on the basis of their outstanding liability to the Class members for whom Plaintiff seeks to represent.

15.    At all relevant times, Defendants were Plaintiff's employer within the meaning of the NYLL §§ 2 and 651.

16.    At all relevant times, Plaintiff was Defendants' employee within the meaning of the NYLL §§ 2 and 651.

17.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

18.     Plaintiff bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt, front-of-house and back-of-house employees (including delivery persons, servers, runners, bussers, bartenders, baristas, cashiers, porters, cooks, line-cooks, food preparers, stock persons, and dishwashers) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case, as defined herein (herein, "FLSA Collective Plaintiffs").

19.     At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in depriving employees of their wages, including overtime, due to time-shaving. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs. A subclass of tipped employees ("Tipped Subclass") has claims for: (i) unpaid wages due to an invalid deducted tip credit; (ii) unpaid tip compensation due to invalid tip pooling; (iii) unlawfully retained gratuities; (iv) liquidated damages; and (v) attorney's fees and costs. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs and the Tipped Subclass. Plaintiff BARCENAS is a member of the Class, and the Tipped Subclass.

20.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their

names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## **RULE 23 CLASS ALLEGATIONS – NEW YORK**

21.      Plaintiff brings claims for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt, front-of-house and back-of-house employees (including delivery persons, servers, runners, bussers, bartenders, baristas, cashiers, porters, cooks, line-cooks, food preparers, stock persons, and dishwashers) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case, as defined herein (the "Class Period").

22.      All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

23.      The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently based are within the sole control of Defendants. There is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff BARCENAS is a member of the Class, and the Tipped Subclass.

24.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants of failure to: (i) pay wages due to time-shaving, (ii) pay employees minimum wages due to an invalid tip credit, (iii) pay tip compensation due to an invalid tip-pooling, (iv) pay spread of hours for shifts that exceeded ten hours in duration, and (v) provide them with proper wage and hour notice upon hiring and annually thereafter, per requirements of the NYLL.

25.     Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

26.     With regard to Plaintiff BARCENAS and the Tipped Subclass, Defendants also failed to pay the proper minimum wage because Defendants were not entitled to claim any tip credit as they failed to meet the statutory requirements under NYLL. Plaintiff BARCENAS and the Tipped Subclass similarly suffered from Defendants' failure to pay the proper minimum wage due to Defendants' invalid tip credit allowance, because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty percent (20%) of the total hours worked during a given shift each workweek; (iii) implemented an invalid tip pooling scheme; (iv) illegally retained tips; (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; and (vi) failed to accurately keep track of daily tips earned and maintain records thereof.

27.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

28.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

29.     Defendants and other employers throughout the state violate New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

30.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class members, including:

a)  Whether Defendants employed Plaintiff and the Class within the meaning of the NYLL;

b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c)  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

d)  Whether Defendants properly notified Plaintiff and Class members of their regular hourly rate and overtime rate;

e)  Whether Defendants properly compensated Plaintiff and Class members for all hours worked;

f)  Whether Defendants compensated Plaintiff and Class members their spread of hours premium, as required under NYLL;

g)  Whether Defendants established a proper tip payment structure for the Tipped Subclass members;

h) Whether Defendants took the proper amount of tip credit allowance under the NYLL;

i) Whether Defendants provided proper notice to Plaintiff and the Tipped Subclass that Defendants were taking a tip credit;

j) Whether Defendants required Tipped Subclass members to perform non-tipped duties exceeding twenty percent (20%) of each workday;

k) Whether Defendants established the tip payment structure for Class members without the agreement or consent of the Class members;

l) Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

m) Whether Defendants provided proper wage statements informing Plaintiff and the Tipped Subclass of the amount of tip credit taken for each payment period and other information required to be provided on wage statements;

n) Whether Defendants provided to Plaintiff and Class members proper wage and hour notice, at date of hiring and annually, per requirements of the NYLL; and,

o) Whether Defendants provided to Plaintiff and Class members proper wage statements with each payment of wages as required by NYLL.

## STATEMENT OF FACTS

31.     In or around August 1, 2021, Plaintiff BARCENAS was hired by Defendant JPM SUTTON LLC d/b/a COCO PAZZERIA to work as a server and waiter at COCO PAZZERIA located at 1078 1st Ave, New York, New York 10022. Plaintiff's employment ended in or around August 29, 2021.

32.     During Plaintiff's employment, Defendants also regularly required Plaintiff to deliver and pick up supplies, ingredients, utensils and uniforms from their other locations.

33.     For example, during Plaintiff's employment, Defendants required Plaintiff to report to Coco Pazzo to pick up his uniform as part of the onboarding process. Further during Plaintiff's employment, Defendants regularly sent Plaintiff and his co-workers to their other Restaurant locations to pick up uniforms for other employees.

34.     Regardless that Plaintiff was hired to work for Defendants' Coco Pazzeria Restaurant, Individual Defendant Giuseppe Luongo expressed his intention to transfer Plaintiff to perform work at Defendants' Morso Restaurant. Further, during his employment, Defendants regularly sent Plaintiff to their other locations to complete various tasks. Similarly, FLSA Collective Plaintiffs and Class members were required to perform work at more than one of Defendants' Restaurants. It was Defendants' practice to train employees at the COCO PAZZERIA located at 1078 1st Ave, and then transfer employees to Defendants' other locations based on Defendants' staffing needs.

35.     Additionally, during Plaintiff's employment, employees, including, but not limited to, servers and bussers, were regularly required to perform work at Defendants' other Restaurants when Defendants were understaffed for shifts.

36.     During Plaintiff's employment, Defendants also regularly required Plaintiff and other employees to deliver and pick up supplies, utensils and ingredients from Defendants' other Restaurants.

37.     It was from these trips to Defendants' other Restaurants and also from speaking to co-workers who regularly worked at multiple Restaurants owned by Defendants' that Plaintiff knew that Defendants used the same unlawful practices of not paying proper wages and retaining employees' tips at all of their locations.

38.     Throughout Plaintiff's employment with Defendants, Plaintiff's regular schedule was five (5) days per week from 4:00 PM to 11:00 PM for a total of thirty-five (35) hours per week.

39.     Despite of Plaintiff's schedule, Defendants requested Plaintiff and Class members to stay on the restaurant premises for at least thirty (30) minutes after closing. Defendants instructed Plaintiff, FLSA Collective Plaintiffs and Class members to overstay until Defendants finished with their administrative duties such as bookkeeping. Defendants never compensated Plaintiff, FLSA Collective Plaintiffs or Class members for this time. Because of this time-shaving policy, Defendants did not compensate Plaintiff for at least two and half (2.5) hours per week.

40.     During his employment by Defendants, Plaintiff was requested to work shifts that exceeded ten (10) hours in duration. However, he never received the corresponding spread of hours premium for working such shifts, as required under NYLL. *See* **Exhibit D**, Plaintiff's time sheet and corresponding paystub, demonstrating that Defendants failed to compensate Plaintiff spread of hours premium. Similarly, Class members regularly worked shifts exceeding ten (10) hours in duration and were never paid spread of hours premium.

41.     Throughout his employment with Defendants, Plaintiff was paid at a rate of ten dollars ($10.00) per hour by check every week. Similarly, FLSA Collective Plaintiffs and Class members were also paid similar rates by Defendants by check every week.

42.     During Plaintiff's employment by Defendants, Defendants compensated Plaintiff at a "tip credit" minimum wage, which was at all relevant times below the New York State minimum wages. Because Defendants failed to fulfill all requirements for a tip credit, all tip credits taken were invalid. FLSA Collective Plaintiffs and Class members similarly had invalid tip credits.

43.     With regard to Plaintiff, and the Tipped Subclass were paid below the minimum wage at an invalid "tip credit" minimum wage. With respect to Plaintiff, and the Tipped Subclass, Defendants were not entitled to claim any tip credit allowance under the NYLL because Defendants (i) failed to properly provide tip credit notice, (ii) failed to inform them that the tip credit claimed by Defendants cannot exceed the amount of tips actually received by them, (iii) failed to inform that tip credit will not apply unless they have been informed of the foregoing tip credit notice requirement, (iv) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty percent (20%) of the total hours worked each workweek, (v) failed to accurately track daily tips earned or maintain records thereof, (vi) failed to properly provide tip credit notice at hiring and annually thereafter, and (vii) failed to provide a proper wage statement with every payment of wages informing Plaintiff and other tipped employees of the amount of tip credit deducted for each payment period. Plaintiff and Tipped Subclass members were required to spend more than twenty percent (20%) of their working time, or more than two (2) hours per shift engaged in non-tipped activities. Specifically, Plaintiff, and Tipped Subclass members, were required to set up tables and chairs in the patio area, move furniture, deliver uniforms and ingredients between Restaurants, do roll ups, polish and clean silverware and glassware, and get containers of drinks and sodas for the bar among other tasks, for more than twenty percent (20%) of their working time, or more than two (2) hours per shift. Defendants improperly claimed tip credit for all hours worked by tipped employees.

44.     Moreover, Defendants improperly distributed tips due to an invalid tip-pooling policy. Individual Defendant GIUSEPPE LUONGO, owner and manager of Corporate Defendants, participated in the tip pooling and held tips that are per law only for the tipped employees. In addition, non-tipped employees, such as the hostess Marissa [LNU] participated in the tip-pooling.

Defendants failed to inform Plaintiff and Tipped Subclass members that all tips received by them were to be retained by them, except pursuant to a valid tip pooling arrangement. *See* **Exhibit E**, where Defendants' records show that Individual Defendant GIUSEPPE LUONGO and non-tipped employees, such as Marissa [LNU], participated in an invalid tip distribution.

45. For example, Marissa the hostess did no serve customers, but shared in the tip pool. In addition, Individual Defendant GIUSEPPE LUONGO would also allocate tips to himself either under his real name or under a fake name "Joseph." *See* **Exhibit E.**

46. By permitting Individual Defendant GIUSEPPE LUONGO and other non-tipped employees to participate in the tip pool, Defendants unlawfully retained gratuities of Plaintiff. FLSA Collective Plaintiffs, and Class members were also subjected to Defendants' unlawful retention of gratuities.

47. Plaintiff and Tipped Subclass members did not receive notice that Defendants were claiming a tip credit on tipped employees' compensation. They were never informed that Defendants were claiming a tip credit allowance.

48. Defendants never provided Plaintiff, FLSA Collective Plaintiffs or Class members with proper wage notices, as required by the NYLL. *See* **Exhibit F**, showing an incomplete and invalid notice provided to Plaintiff, which (i) is not in Plaintiff's primary language (Spanish), (ii) does not indicate whether the notice was given at hiring, (iii) does not indicate whether Plaintiff is paid at an hourly rate, (iv) does not indicate if Defendants would take an allowance even though Plaintiff is a tipped employee, (v) includes a wrong overtime-time rate which should equal $17.50, the overtime rate for tipped employees in New York, (vi) does not indicate who prepared and provided the notice, and (vii) is outdated since the form is labeled LS 56 (01/17), indicating that it

is a 2017 form, even though Plaintiff did not begin his employment with Defendants until 2021. FLSA Collective Plaintiffs and Class members were similarly provided with invalid forms.

49.     Defendants did not provide Plaintiff, FLSA Collective Plaintiffs and Class members with proper wage statements at all relevant times as they did not properly show tip deductions as required under the NYLL. *See* **Exhibit G**.

50.     At no time during the relevant time periods did Defendants provide Plaintiff or Tipped Subclass Class members with wage notices or proper wage statements as required by NYLL. Defendants also failed to disclose the hourly rate of tip credit taken, or the amount of tip credit claimed in each pay period on the wage statements provided to Tipped Subclass members. *See* **Exhibit F.**

51.     Furthermore, Defendants compensated Plaintiff, FLSA Collective Plaintiffs and Class members every week in payroll check and separately, Defendants compensated Plaintiff and Class members in cash for amounts corresponding to tips. Defendants failed to properly withhold Plaintiff, FLSA Collective Plaintiffs and Class members wages for tax purposes. Defendants also failed to contribute to FICA for Plaintiff, FLSA Collective Plaintiffs and Class members.

52.     At no time during the relevant period did Defendants provide Plaintiff or Class members with proper wage statements as required by NYLL. Plaintiff and Class members received fraudulent wage statements that reflected only part of their tips, and not actual tips accrued.

53.     Defendants further failed to provide Plaintiff and Class members with an accurate W-2 tax statement.

54.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff and Class members in this litigation and has agreed to pay the firm a reasonable fee for its services.

# STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF FAIR LABOR STANDARDS ACT

55.     Plaintiffs realleges and reaver the foregoing paragraphs of this Second Amended Class and Collective Action Complaint as fully set forth herein.

56.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

57.     At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of FLSA.

58.     At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

59.     At all relevant times, Defendants had a policy and practice that failed to pay wages due to invalid tip credit to Plaintiff BARCENAS and FLSA Collective Plaintiffs.

60.     At all relevant times, Defendants had a policy and practice that failed to pay gratuities, to Plaintiffs and FLSA Collective Plaintiffs due to an improper tip pooling policy.

61.     At all relevant times, Defendants had a policy and practice of unlawfully retaining gratuities of Plaintiff BARCENAS and FLSA Collective Plaintiffs.

62.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case, and if necessary, will seek

leave of Court to amend this Second Amended Class and Collective Action Complaint to set forth the precise amount due.

63.     Defendants knew of and/or showed a willful disregard for the provisions of FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs proper wages, when Defendants knew or should have known such was due.

64.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under FLSA.

65.     As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

66.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages due to invalid tip credit, unpaid tips due to an invalid tip pooling policy, tip retentions and deductions, plus an equal amount as liquidated damages.

67. Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW ON BEHALF OF PLAINTIFF AND CLASS MEMBERS

68.     Plaintiff realleges and reavers the foregoing paragraphs of this Second Amended Class and Collective Action Complaint as if fully set forth herein.

69.     At all relevant times, Plaintiff and Class members were employed by the Defendants within the meaning of the NYLL, §§2 and 651.

70. At all relevant times, Defendants engaged in a policy and practice of refusing to pay Plaintiff and Class members their wages due to time-shaving.

71. At all relevant times, Defendants willfully violated Plaintiff and tipped subclass members' rights by failing to pay them minimum wages in the lawful amount for hours worked. As factually described above, Defendants were not entitled to claim any tip credits under NYLL with respect to the Tipped Subclass.

72. At all relevant times, Defendants failed to properly notify employees of their tips and tip pooling policies, in direct violation of the NYLL.

73. At all relevant times, Defendants willfully operated their business with a policy of not paying Plaintiff and Class members their corresponding Spread of Hours premium, as required under the NYLL.

74. Defendants failed to provide a proper wage and hour notice, at the date of hiring and annually, to all non-exempt employees per requirements of the NYLL.

75. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and tipped Subclass members proper tip notices, at date of hiring and annually thereafter, as required under NYLL.

76. Defendants failed to provide proper wage statements with correct payment as required by NYLL § 195(3).

77. Due to the Defendants' NYLL violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid minimum wages due to an invalid tip credit, unpaid wages due to time-shaving, unpaid spread of hours, unpaid tip compensation due to invalid tip pooling, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

## COUNT III

## CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS

## UNDER 26 U.S.C. § 7434(a)

78.     Plaintiff realleges and reavers the foregoing paragraphs of this Second Amended Class and Collective Action Complaint as if fully set forth herein.

79.     Defendants failed to provide Plaintiff, FLSA Collective Plaintiffs and Class members with accurate IRS Forms W-2 for all the tax years of their employment and failed to properly record, account for, and report to the IRS all monies paid to Plaintiff, FLSA Collective Plaintiffs and Class members. In failing to account for these monies in their IRS filings, Defendants filed fraudulent information in violation of 26 U.S.C. § 7434.  Under 26 U.S.C. § 7434(b), Defendants are liable for at least $5000 to Plaintiff, FLSA Collective Plaintiffs and Class members for each fraudulent filing, which would have to be at least once a year.

80.     Defendants also unjustly enriched themselves at the expense of Plaintiff, FLSA Collective Plaintiffs and Class members by retaining monies that should have been remitted to the IRS on Plaintiff's and Class members' behalf.

81.     As a result, Plaintiff, FLSA Collective Plaintiffs and Class members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

82.     Even if Defendants could show that they paid some employees a part of their wages in check and filed the appropriate W-2s for those checks, Defendants would remain liable to those employees for failing to pay FICA taxes on the cash portion of their wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class members, respectfully requests that this Court grant the following relief:

a) A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

b) An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c) An award of unpaid minimum wages due to an invalid tip credit due under the NYLL;

d) An award of unpaid wages due to an invalid tip pooling policy, due under the FLSA and the NYLL;

e) An award of invalidly retained gratuities under the FLSA and the NYLL;

f) An award of unpaid wages due to invalid time-shaving policies under the NYLL;

g) An award of unpaid spread of hours premium under the NYLL;

h) An award of statutory penalties as a result of Defendants' failure to comply NYLL wage notice and wage statement requirements;

i) An award of liquidated damages as a result of Defendants' willful violations of the FLSA and the NYLL;

j) An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

k) Designation of Plaintiff as Representative of FLSA Collective Plaintiffs;

l) Designation of Plaintiffs as Representative of the Tipped Subclass members;

m) Designation of this action as a class action pursuant to F.R.C.P. 23;

n)   Designation of Plaintiff as Representative of the Class;

o)   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all causes of action and issues so triable as of right by jury.

Date: August 10, 2022
New York, New York

Respectfully submitted,

By:  /s/ *CK Lee*

C.K. Lee, Esq.
**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 W. 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs, and the Class*